UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES RUFUS, | |
| Plaintiff, | Case No. 17-cv-4192 |
| v. | |
| CITY OF CHICAGO, et al., | Judge John Robert Blakey |
| Defendants. | |

# MEMORANDUM OPINION AND ORDER

Plaintiff James Rufus sued Defendants City of Chicago, Elizabeth Williams, and Robert May under 42 U.S.C. § 1983, Title VII of the Civil Rights Act, and the Illinois Whistleblower Act (IWA). Plaintiff alleges that Williams refused to promote him because of his race and that May failed to stop her from engaging in such conduct. Plaintiff alleges that the City discriminated against him on the basis of race and retaliated against him for complaining about discrimination and harassment. The City and May moved to dismiss. For the reasons explained below, this Court partially grants the City's motion and grants May's motion.

I. The Complaint's Allegations

A. This Case

Plaintiff, an African-American man, previously worked for the City as a custodian at O'Hare International Airport. [50] at 2.[1] Around mid-2015, Plaintiff

---

[1] Plaintiff's third amended complaint [50] begins each of its five counts with paragraph 25, rendering paragraph numbers largely useless for citations, so this Court cites to page numbers instead.

1

complained internally about sexual harassment after Williams, a Hispanic woman, inappropriately touched him in the hallway at work. *Id.* Williams then subjected Plaintiff to "derogatory and racial comments." *Id.* Plaintiff complained again—to May—about Williams' behavior, but May failed to investigate Plaintiff's complaints or remedy the situation. *Id.* at 2–3.

In June or July 2016, the City posted two job openings for "Foreman of Custodial Workers" at O'Hare. *Id.* at 3. Plaintiff applied for the promotion, but Williams told another employee that she would not promote Plaintiff and that she would hire at least one Hispanic individual. *Id.* In November 2016, the City announced that it would hire the foremen based solely upon two factors: scores on an exam and seniority. *Id.* Despite announcing that new process, the City scheduled Plaintiff for a job interview with Williams on December 13, 2016. *Id.* Williams asked Plaintiff questions that—in violation of City protocol—Human Resources did not approve in advance. *Id.* Plaintiff later learned that Williams gave the questions to another candidate, Andrea Dennis, before her interview. *Id.*

From December 2016 to January 2017, Plaintiff contacted the City's Office of the Inspector General (OIG) multiple times to report potential hiring, testing, and application fraud. *Id.* at 4. Subsequently, management told custodial workers, including Plaintiff, to "stop calling the OIG and threatening the City with lawsuits." *Id.* Plaintiff says that the City refused to promote him because he reported misconduct to the OIG. *Id.* at 9. Although Plaintiff had six years of seniority over Dennis, Dennis got one of the available job openings. *Id.* at 4. Saul Soto, a

2

Hispanic man, got the second spot. *Id.*

May knew about the promotion and interview process for custodians and knew that Williams, whom he supervised, made derogatory remarks to Plaintiff and "misused her position" to retaliate against Plaintiff by refusing to promote him. *Id.* at 6. May also knew that Williams treated Plaintiff differently because of Plaintiff's race, but May failed to prevent Williams from discriminating against Plaintiff. *Id.*

### B. EEOC Charge

Plaintiff filed a discrimination charge with the EEOC on December 5, 2016—about a week before his job interview with Williams. *Id.* at 1, 3; *see also* [22-1].[2] He received a right-to-sue letter in March 2017 and filed this case in June 2017. [50] at 1–2. Plaintiff's EEOC charge stated:

> I have been subjected to racial comments which have created a hostile work environment; I complained, to no avail. I also filed a prior EEOC Charge (EEOC Charge No. 440-2016-03621) alleging sexual harassment and, subsequently, I have been subjected to retaliation, including, but no [sic] limited to, harassment and passed up for promotion. I have been discriminated against because of my race, Black, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

[22-1].

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief,

---

[2] Although Plaintiff inadvertently failed to attach a copy of his EEOC charge to his third amended complaint—the current operative pleading—he attached a copy to his second amended complaint, [22-1], and the third amended complaint refers to the EEOC charge as "Exhibit A," [50] at 2. Thus, this Court may consider the EEOC charge contained in [22-1] because it is central to the complaint and the complaint refers to it. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

3

Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Williamson*, 714 F.3d at 436.

In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. This Court does not, however, accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

### III. Analysis

#### A. The City's Motion to Dismiss

The City argues that Plaintiff's race-discrimination and retaliation claims (Counts III and IV, respectively) fail because they exceed the scope of his EEOC charge. [24] at 3–6. The City also argues that Plaintiff fails to plead sufficient facts for his IWA claim (Count V). *Id.*

##### 1. The Scope of Plaintiff's EEOC Charge

In Title VII cases, a plaintiff may only pursue claims that fall within the scope of the plaintiff's EEOC charge. *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005). The Seventh Circuit uses a two-prong inquiry for determining whether a

4

plaintiff's current claims, if not explicitly alleged in the EEOC charge, come within the charge's scope: (1) whether the complaint's allegations reasonably relate to the charge's allegations; and (2) if they reasonably relate, whether the current claim "reasonably could have developed from the EEOC's investigation of the charges before it." *Id.* (citing *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996)). Allegations reasonably relate to each other when they have a factual relationship, meaning—at a minimum—that the EEOC charge and the complaint "describe the same conduct and implicate the same individuals." *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001) (internal quotation marks omitted).

Plaintiff filed his EEOC charge on December 5, 2016, before his interview with Williams and thus before the City allegedly refused to promote him because of his race, [50] at 1–3, 7. The charge states that Plaintiff faced "racial comments which have created a hostile work environment," that the City passed him up for promotion because he filed a prior EEOC charge regarding sexual harassment, and that "I have been discriminated against because of my race, Black." [22-1]. Against that backdrop, Count III cannot proceed because an insufficient factual relationship exists between the EEOC charge and the allegations of Count III. *See Kersting*, 250 F.3d at 1118.

Count III alleges that the City discriminated against Plaintiff by refusing to promote him because of his race. [50] at 7. But the EEOC charge contains only two race-related allegations: (1) a general allegation that the City discriminated against Plaintiff because of his race; and (2) an allegation that the City subjected Plaintiff to

5

"racial comments which have created a hostile work environment." [22-1]. Those allegations did not provide enough specificity to allow the EEOC to investigate a charge of race-based failure to promote. *See Rush v. McDonald's Corp.*, 966 F.2d 1104, 1111–12 (7th Cir. 1992) ("We hold that it will not suffice to file general charges with the EEOC"—as the plaintiff did by stating: "I believe I have been discriminated against because of my race, Black"—and then "to expect that this allegation will permit all claims of race-based discrimination in a subsequent lawsuit."); *Reynolds v. Tangherlini*, 737 F.3d 1093, 1100 (7th Cir. 2013) (Title VII claim could not proceed when the EEOC charge "failed to provide minimally adequate factual specificity" for the EEOC to have investigated the claim).

Also, Plaintiff filed his EEOC charge *before* the City allegedly failed to promote him because of his race. Normally, someone who suffers a discrete act of discrimination must file an EEOC charge "within a specified period of time *after* the challenged employment action occurs." *Adams v. City of Indianapolis*, 742 F.3d 720, 730 (7th Cir. 2014). Failure to promote constitutes a discrete act of discrimination, as distinct from hostile environment claims that involve repeated conduct. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002). Here, Plaintiff filed his EEOC charge *before* the alleged failure to promote, so he failed to give the EEOC or the City notice of the wrong alleged in Count III. *See Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989) (claim of racial harassment not within scope of EEOC charge that pertained to earlier time period and asserted only a discriminatory failure to promote). Consequently, this Court dismisses Count III

with prejudice.

Count IV alleges that the City failed to promote Plaintiff to Foreman in retaliation for Plaintiff complaining *internally* about sexual harassment and racial discrimination. [50] at 8. Again, although Plaintiff does not specify the exact date that the City failed to promote him to Foreman, this alleged retaliation came after Plaintiff filed his EEOC charge on December 5. *See id.* at 1–3. So, although Plaintiff alleged a retaliatory failure to promote in his EEOC charge, it is a different retaliatory failure to promote than the one he alleges in Count IV. *See* [22-1] ("I also filed a prior EEOC Charge (EEOC Charge No. 440-2016-03621) alleging sexual harassment and, subsequently, I have been subjected to retaliation, including, but no [sic] limited to, harassment and passed up for promotion"). Thus, the prior retaliation charge and Count IV do not reasonably relate to each other because they do not allege the same conduct. *See Kersting*, 250 F.3d at 1118. Although both allege a retaliatory failure to promote, the similarities end there. The charge and Count IV describe two separate retaliatory acts that occurred at different times and for different reasons: the former because Plaintiff filed an EEOC charge about sexual harassment, and the latter because Plaintiff complained to the OIG about hiring practices. *Compare* [22-1], *with* [50] at 8. The December 5 EEOC charge does not allege any retaliation for making internal complaints.

Also, because failure to promote constitutes a discrete act of discrimination, Plaintiff needed to file another EEOC charge *after* the City failed to promote him to Foreman. *See Adams*, 742 F.3d at 730. Plaintiff argues that an exception exists for

7

retaliation claims that arise after a plaintiff files an EEOC charge, making it "unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge." [38] at 6. True in some cases, but not applicable here. As Plaintiff says, the Seventh Circuit holds that "a plaintiff who alleges retaliation for *having filed a charge with the EEOC* need not file a second EEOC charge to sue for that retaliation." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1030 (7th Cir. 2013) (emphasis added). But Plaintiff does not allege retaliation for having filed a charge with the EEOC; he alleges retaliation for making internal complaints. [50] at 8. Thus, Count IV does not fall within the carve-out for subsequent retaliation claims.

Plaintiff also argues that this Court should consider notes that an EEOC investigator took during a February 2017 meeting with Plaintiff; these notes allegedly detail multiple failure-to-promote claims that Plaintiff discussed with the investigator, and Plaintiff attached the notes to his response brief. [38] at 4–5. Plaintiff did not, however, attach the notes to his complaint or refer to the notes (or any meeting with investigators) in his complaint. Rule 12(b)(6) limits this Court to considering the complaint, documents attached to the complaint, documents central to the complaint (to which the complaint refers), and information properly subject to judicial notice. *Williamson*, 714 F.3d at 436. The investigator's notes do not fit any of those categories, so this Court declines to consider them.

Even if the notes were considered, however, a federal claim may not be predicated on oral charges made to an investigator that are neither "reflected in nor

8

reasonably related to the charge actually filed." *Vela v. Vill. of Sauk Village*, 218 F.3d 661, 665 (7th Cir. 2000). This Court dismisses Count IV with prejudice.

### 2. Plaintiff's IWA Claim

The City argues that Count V fails because Plaintiff disclosed purportedly illegal practices to his own employer (the OIG, another City entity) instead of an outside agency. [24] at 7. Plaintiff responds that the IWA protects government employees who make disclosures to government or law-enforcement agencies, including their own employer. [38] at 10. This Court agrees. *See Milsap v. City of Chicago*, No. 16-cv-4202, 2018 WL 488270, at *9 (N.D. Ill. Jan 19, 2018).

The IWA bars employers from retaliating against employees who disclose information to a government or law-enforcement agency, "where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b). The IWA normally does not protect employees who merely make internal disclosures to their own employers. *See Riedlinger v. Hudson Respiratory Care, Inc.*, 478 F. Supp. 2d 1051, 1055 (N.D. Ill. 2007). But that general rule does not apply here, because the plain language of the statute only requires an employee "to report to a government or law-enforcement agency," and thus, it does not create a catch-22 when a government or law-enforcement agency also happens to be the whistleblower's employer. *Brame v. City of North Chicago*, 955 N.E.2d 1269, 1272–73 (Ill. App. Ct. 2011), *appeal denied*, 962 N.E.2d 480 (Ill. 2011).

Thus, contrary to the City's position, municipal employees fall within the ambit of the IWA when they properly report to the OIG. *Id.* (explaining that the Illinois legislature intended to protect, for example, a police officer who reports the illegal conduct of fellow police officers to department superiors). Plaintiff, who happened to work for City government, alleges that he reported "potential hiring, testing, and application fraud" to the OIG on multiple occasions from December 2016 to January 2017. [50] at 4. He also alleges that the City warned him to stop complaining to the OIG, and that the City refused to promote him as a result of his complaints. *Id.* at 9. At this stage, those allegations state a viable IWA claim. *See Brame*, 955 N.E.2d at 1272–73.

Oddly, the City perfunctorily dismisses *Brame* as "an Illinois state court case this Court should not consider." [44] at 7. The IWA constitutes substantive Illinois law; in exercising supplemental jurisdiction over Plaintiff's IWA claim, this Court is "bound by state court decisions as well as state statutes." *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Thus, this Court follows the well-reasoned decision in *Brame*, and denies the City's motion to dismiss Count V.

### B. May's Motion to Dismiss

May argues that the § 1983 claim against him (Count II) fails because Plaintiff alleges only vicarious liability rather than the personal involvement necessary under § 1983. [57] at 3–6. May also argues that qualified immunity protects him because Plaintiff fails to allege any clearly established constitutional

10

or statutory right that May violated. *Id.* at 7. Plaintiff, now representing himself, filed a response that simply restates the complaint's factual allegations and lacks any legal arguments. [72].

In responding to a motion to dismiss, "the non-moving party must proffer some legal basis to support his cause of action." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (internal quotation marks omitted). When a motion provides plausible grounds for dismissing a claim and the plaintiff fails to make any legal argument in response, the plaintiff waives that claim. *Lekas v. Briley*, 405 F.3d 602, 615 (7th Cir. 2005). This rule applies to pro se plaintiffs too. *See id.*

Plaintiff waived his claim against May by failing to raise any legal arguments in response to May's plausible arguments for dismissal. *See id.* Thus, this Court dismisses Count II. *See Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) (explaining that the adversarial justice system dictates that, when a Rule 12(b)(6) motion gives "plausible reasons for dismissing a complaint," a court will not "do the plaintiff's research and try to discover whether there might be something to say against the defendant's reasoning").

## IV. Conclusion

This Court partially grants the City's motion to dismiss [24]. This Court grants the City's motion with prejudice as to Counts III and IV, but denies it as to Count V. This Court grants May's motion to dismiss [57] and dismisses Count II. Count I remains because Williams did not move to dismiss it. All dates and deadlines stand.

Dated: April 23, 2018

Entered:

_____
John Robert Blakey
United States District Judge