UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES RUFUS,<br><br>  Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO, et al.,<br><br>  Defendants. | Case No. 17-cv-4192<br><br>Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

Plaintiff James Rufus sues his former employer, Defendant City of Chicago (City), and his former manager, Elizabeth Williams, alleging that: (1) Williams discriminated against him based upon race in violation of 42 U.S.C. § 1983 when she failed to promote him (Count I); and (2) the City retaliated against him in violation of the Illinois Whistleblower Act (IWA) (Count V). [50]. This Court previously dismissed Counts II, III, and IV of Plaintiff's Third Amended Complaint (TAC) with prejudice. [75]. Defendants now move for summary judgment on the two remaining claims. [94]. For the reasons explained below, this Court grants Defendants' motion.

I. **Background**

The following facts come from Defendants' Local Rule 56.1 statement of material facts, [96], Plaintiff's response to Defendants' statement of material facts, [99], Plaintiff's statement of additional facts, [100], and Defendants' response to

Plaintiff's statement of additional facts, [106]. As a preliminary matter, Defendants raise two evidentiary issues that this Court addresses before turning to the facts themselves.

### A. Defendants' Evidentiary Objections

First, Defendants argue that Plaintiff's statement of additional facts relies, in part, upon documents that Plaintiff's counsel failed to disclose to Defendants prior to summary judgment. [105] at 4; [99-1]; [99-5]. Therefore, Defendants maintain, Plaintiff cannot now use them to supply evidence on a summary judgment motion, pursuant to Fed. R. Civ. P. 37(c)(1). This Court agrees.

Under Rule 37(c)(1), if a party fails to "provide information or identify a witness as required by Rule 26(a) or (e)," that party cannot then "use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." *Karum Holdings LLC v. Lowe's Cos.*, 895 F.3d 944, 951 (7th Cir. 2018). The "exclusion of nondisclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Id.* (citing *Musser v. Gentiva Health Servs., Inc.*, 356 F.3d 751, 755 (7th Cir. 2004)).

At the parties' motion hearing, Plaintiff's counsel conceded that he could not dispute that Plaintiff failed to timely disclose the relevant documents. Nor can Plaintiff explain his failure to disclose or otherwise demonstrate that such failure was justified or harmless. *See generally* [98]. Accordingly, this Court excludes [99-1] (Exhibit A) and [99-5] (Exhibit E) pursuant to Rule 37(c)(1).

2

Second, Defendants argue that many statements within Plaintiff's statement of additional facts rely upon inadmissible hearsay. [105] at 3. Specifically, Defendants object to the following statements on hearsay grounds: [100] ¶¶ 3–4, 6–10, 12. [105] at 3. But as discussed below, even if all these statements were admissible, they cannot help Plaintiff prove his section 1983 or IWA claim. Accordingly, this Court need not decide Defendants' hearsay objections.

### B. The Parties

Plaintiff—an African-American male—began working for the City in 2010 as a custodian in O'Hare Airport's Department of Aviation. [96] ¶¶ 1, 25. Plaintiff held this position until he resigned in 2018. *Id.* ¶ 2. Defendant Williams works as a Terminal Manager at O'Hare. *Id.* ¶ 3.

### C. Plaintiff's & Williams' Work History

On March 16, 2016, Williams touched Plaintiff's stomach. [100] ¶ 14. According to Williams, the incident occurred when she informed Plaintiff "that he was a loved man and any way to a man's heart is through his stomach and I tapped him on his stomach." [99-7] at 20. The following day, Williams became aware that Plaintiff had submitted a complaint against her regarding the incident. [100] ¶ 14. DHR Director Robert May spoke with Williams shortly after and informed her that Plaintiff considered Williams' actions to be sexual harassment. *Id.*

Plaintiff's statement of additional facts refers to *complaints*—plural—that he made against Williams before the hiring process at issue in this case. *See, e.g., id.* ¶ 11. The cited portions of Plaintiff's deposition testimony, however, fail to reveal any

additional complaints—aside from the March 16, 2016 incident—that Plaintiff made against Williams before the relevant promotion decision. *See* [99-6] (Exhibit F) at 112−13, 127, 161−62. And at the parties' motion hearing, Plaintiff conceded that he had no testimony or other record evidence to show that Williams knew about any additional complaints Plaintiff may have made against her.

D.   **The Foreman Hiring Process**

In August 2016, the City posted two vacancies for a Foreman of Custodial Workers (foreman) position in the Aviation Department. [96] ¶ 15. The standard promotion process for the Foreman position consists of a written exam (Part I) and a verbal interview (Part II). *Id.* ¶ 7. Before the written exam, the Department of Human Resources (DHR) makes an initial determination of whether candidates satisfy the position's minimal qualifications, based upon applications submitted through the City's online hiring system. *Id.* ¶ 8. DHR then creates a list of minimally qualified candidates and schedules them for the written exam. *Id.* After administering and scoring the written exam, DHR then creates a list identifying those candidates who passed the exam and thus may proceed to the interview stage. *Id.* ¶ 9.

At the interview stage, a panel asks every candidate the same DHR-approved questions. *Id.* ¶¶ 10−11. Each panelist rates every answer given by a candidate as either: (1) "candidate does not demonstrate the competency"; (2) "candidate demonstrates some of the competency"; or (3) "candidate clearly demonstrates competency." *Id.* ¶ 11. Following each interview, the panelists rate the candidate's

overall interview performance as: (1) "do not recommend candidate for hire"; (2) "recommend with some reservations"; or (3) "recommend candidate for hire." *Id*. The panelists then meet with a DHR representative for a consensus meeting, during which they discuss the ratings and select a candidate based upon them. *Id*. ¶ 13.

After the City announced the foreman vacancies in August 2016, Plaintiff applied for the position and made DHR Recruiter Phyllinis Easter's list of candidates qualified to sit for the written exam. *Id*. ¶ 17. Plaintiff, along with two other candidates, passed the written exam and received invitations to interview for the position. *Id*. ¶ 20.

The foreman interviews took place the morning of December 13, 2016. *Id*. ¶ 21. Williams—as one of the panelists—prepared the interview questions that morning, and Administrative Services Officer Priscilla Crowder typed them. *Id*. Easter, as the DHR representative, approved Williams' questions before the interviews began. *Id*. ¶¶ 22, 37.

The foreman interview panel consisted of Williams, Training Director Dawna Harrison, and Terminal Manager Mirian Martinez. *Id*. ¶ 23. Each of the three candidates that the panel interviewed were African-American. *Id*. ¶ 25. The panel asked each candidate the same questions, and each panelist gave a rating for every answer the candidates provided. *Id*. ¶ 26.

In the afternoon of December 13, 2016, after the close of interviews, the panel met with Easter for a consensus meeting. *Id*. ¶ 30. Easter worked with the panel to go through the assessments and reach a consensus on which candidate, or candidates,

5

to hire for the vacancies. *Id.* ¶ 31. Easter's notes reflect that: (1) two interviewers recommended candidate Andrea Dennis for hire, and one interviewer recommended her with reservations; (2) one interviewer recommended candidate Regina Williams with reservations, and two interviewers did not recommend her for hire; and (3) one interviewer recommended Plaintiff for hire with reservations, and two interviewers did not recommend him for hire. *Id.* ¶ 32. The consensus meeting notes demonstrate that Plaintiff did not provide actual details and examples of work experience in response to the interview questions. *Id.* Moreover, the consensus meeting notes reflect that Plaintiff gave poor answers to leadership-related questions in the interview. *Id.* After discussion, Easter and the panelists agreed to hire Dennis, thus declining to hire Plaintiff and Regina Williams. *Id.*

Because the internal process chose only one candidate for the two foreman vacancies, DHR subsequently began a second round of hiring for external candidates in 2017. *Id.* ¶ 38. Plaintiff concedes that DHR could not reconsider Plaintiff a second time as part of this external selection round. *Id.* ¶ 39. For the external search, Easter again created a list of qualified candidates for the written test, followed by interviews for the three candidates who passed the written exam. *Id.* ¶ 38. The City ultimately hired Saul Soto, who is Hispanic, for the last open position. *Id.*; [100] ¶ 7.

### E. Plaintiff's Post-Interview Complaints

The day of the interview, Plaintiff contacted the City's Office of Inspector General (OIG) to complain that Williams should not have interviewed him because he had previously filed internal complaints against her, and thus she harbored bias

6

against him. [96] ¶ 40. On December 19, 2016, after learning that he did not receive the promotion, Plaintiff reached out again to OIG to complain about irregularities in the interview process and to formally claim that the Aviation Department engaged in hiring violations by allowing Williams to interview him. *Id*. The OIG denied both the December 13 and December 19 complaints. *Id*. ¶ 42.[1]

In addition to his December 2016 OIG complaints, Plaintiff filed an EEOC charge against the Department of Aviation on December 5, 2016—prior to his interview—for race-based discrimination and retaliation. *Id*. ¶ 45; [22-1]. Both parties also agree that Plaintiff filed a complaint with the City EEO office in April 2016. [96] ¶ 44. Neither party has produced, or otherwise indicated the substance of, the April 2016 complaint. *See id*.; [96-7] (Exhibit N). Moreover, based upon the factual record here, it remains unclear whether the EEOC or EEO complaint has anything to do with Williams or the foreman promotion process. *See id*.; [22-1].

## II. Legal Standard

Courts should grant summary judgment when the moving party shows that no genuine dispute exists as to any material fact and the evidence weighs so heavily in the moving party's favor that the moving party "must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also* Fed. R. Civ. P. 56. A genuine dispute as to a material fact exists when, based upon the evidence, a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 248. To

---

[1] When the OIG declines a complaint, it means that after OIG reviewed the complaint through its multi-step complaint intake process, and applied its criteria for opening a case, it decided not to open an investigation. [96] ¶ 42.

7

show a genuine dispute as to a material fact, the non-moving party must point to "particular materials in the record," and cannot rely upon the pleadings or speculation. *Olendzki v. Rossi*, 765 F.3d 742, 746 (7th Cir. 2014).

At summary judgment, courts must evaluate evidence in the light most favorable to the non-moving party and refrain from making credibility determinations or weighing evidence. *Rasho v. Elyea*, 856 F.3d 469, 477 (7th Cir. 2017) (citing *Anderson*, 477 U.S. at 255). The moving party bears the burden of establishing the lack of genuine disputes as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## III. Analysis

Following this Court's ruling on Defendants' motion to dismiss, [75], only two counts remain in Plaintiff's TAC: (1) a section 1983 equal protection claim against Williams for failing to promote him because of his race; and (2) a Section 15(b) claim under the IWA against the City. [50].[2] This Court analyzes each claim in turn.

### A. Plaintiff's Section 1983 claim

Count I claims that Williams refused to promote Plaintiff to foreman because of his race, and instead hired a less-qualified, less senior, and non-African-American individual. *Id*. ¶ 29. Plaintiff brings this claim under 42 U.S.C. § 1983—a statute that does not itself create substantive rights, but instead provides "a means for vindicating federal rights conferred elsewhere." *Padula v. Leimbach*, 656 F.3d 595,

---

[2] Plaintiff's TAC also alleges a Section 20 IWA claim against the City. [50] ¶¶ 28−29. But, Plaintiff fails to address Section 20 in his response memorandum, *see generally* [98], and thus waives this claim. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.")

8

600 (7th Cir. 2011) (internal quotation omitted). Defendants move for summary judgment on this claim, arguing *inter alia* that Plaintiff has no evidence to show that race played a role in the decision not to promote him. [95] at 4−8. This Court agrees and finds that Plaintiff fails to create an issue of fact as to whether Williams declined to promote him because of his race.

1. **Section 1983 Generally**

42 U.S.C. § 1983 provides that a person may not be deprived of any constitutional right by an individual acting under color of state law. *See, e.g.*, *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). Accordingly, public employees alleging unlawful discrimination in the terms of their employment may bring suit under section 1983 against any responsible persons acting under color of state law. *Trigg v. Ft. Wayne Community Schools*, 766 F.2d 299, 302 (7th Cir. 1985). A state employee acting in his or her official capacity, as Williams did in considering Plaintiff for the foreman position, acts "under color of state law." *West v. Atkins*, 487 U.S. 42, 49−50 (1988); *Walker v. Taylorville Correctional Ctr.*, 129 F.3d 410, 413 (7th Cir. 1997).

Once Plaintiff meets the color of law requirement, his equal protection claim follows the same standards and analytical framework as a Title VII failure-to-promote claim, except that a section 1983 claim, unlike a Title VII claim, can be brought against an individual. *Lewis*, 581 F.3d at 472−73; *see also Williams v. Seniff*, 342 F.3d 774, 788 n.13 (7th Cir. 2003) ("Our cases make clear that the same standards for proving intentional discrimination apply to Title VII and § 1983 equal protection.")

9

(collecting cases). Accordingly, Plaintiff survives summary judgment if the evidence would permit a reasonable factfinder to conclude that his race caused the failure to promote decision. *Ortiz v. Werner Enterprises*, 834 F.3d 760, 765 (7th Cir. 2016); *see also David v. Bd. of Trs. of Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017).

## 2. Plaintiff Fails to Show Race-Based Discrimination

To support his claim that Williams failed to promote him because of his race, Plaintiff first points to Saul Soto as a "less-qualified Hispanic individual who filled one of the two foreman openings in 2016-2017." [98] at 4. First, the Aviation Department did not even begin the external hiring process through which it hired Soto until after it interviewed and rejected Plaintiff. [96] ¶ 38. But, even if the panel had considered Plaintiff and Soto together, Plaintiff's argument relies solely upon his statement that Soto could not "strip or wax." [100] ¶ 8. Absent any information in the record as to whether the foreman position required knowing how to strip or wax,[3] or any evidence regarding Plaintiff and Soto's relevant work histories and educational backgrounds, this Court cannot begin to compare their relative qualifications, much less find an inference of race-based discrimination. *See Mokry v. PartyLite Worldwide*, No. 07 C 0972, 2009 WL 2588888, at *11 (N.D. Ill. Aug. 20, 2009) (plaintiff's failure to promote claim failed because "the record contain[ed] no evidence of the qualifications of the people who received the positions," preventing the court from determining if the selectees were similarly or less qualified than plaintiff); *see also Johnson v. Nordstrom Inc.*, 260 F.3d 727, 733 (7th Cir. 2001) (a plaintiff's

---

[3] The record states only that the foreman position required two years of work experience in custodial, janitorial, or building maintenance work. [100] ¶ 15.

10

"subjective belief that [he] was better qualified" cannot by itself raise a factual dispute).

Second, Plaintiff argues that Williams "applied and utilized" the evaluation process in "a biased fashion." [98] at 5. Specifically, he states that after Williams asked Plaintiff a series of questions about his computer skills in the interview, "she did not actually test him on any of his skills, and based her assessment solely on his answers." *Id*. at 3. According to Plaintiff, Williams then asked Dennis about her computer skills, and "based on Dennis's confidence alone (and without giving her any test of any kind to actually prove or demonstrate her skills), Williams deemed her to be competent." *Id*.

But, rather than prove his point, Plaintiff's argument demonstrates a consistent, uniform interview process. In both interviews, Williams asked the employees the same questions, and then evaluated them based solely upon their answers. And as the consensus meeting notes reflect, Plaintiff's answers failed to provide actual details and examples of any relevant work experience. [96] ¶ 32. Moreover, Plaintiff gave poor answers to leadership-related questions in the interview. *Id*. Whether Williams and the rest of the panel should have given each candidate a test to prove their skills, rather than rely solely upon their interview answers, is not for this Court to decide. *See Hudson Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004) (holding that when evaluating Title VII claims, a court cannot "sit as a super-personnel department that reexamines an entity's business decisions.") (quoting *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986)).

11

In addition to the above arguments, Plaintiff points to statements made by Williams as purported evidence of race-based discrimination. According to Plaintiff, Williams "repeatedly showed a bias against Plaintiff's protected class by making derogatory statements or treating people outside of his protected class more favorably." [98] at 3. In support of this assertion, Plaintiff states that Williams, at unspecified times, referred to custodians as "puppets," and made statements such as "if they don't understand English we'll go ahead and get them a translator." *Id.*

As an initial matter, these comments—while perhaps generally insulting to custodians—do not suggest animus against Plaintiff's protected class (African-American), much less animus towards Plaintiff in particular. *Manson v. GMC*, 66 Fed. Appx. 28, 33 (7th Cir. 2003) ("Federal civil rights laws do 'not guarantee a utopian workplace, or even a pleasant one.'") (quoting *Vore v. Ind. Bell Tel. Co., Inc.*, 32 F.3d 1161, 1162 (7th Cir. 1994)); *Lyon-Scott v. Potter*, 37 Fed. Appx. 807, 809 (7th Cir. 2002) ("Title VII is not a general remedy for office environments plagued by an obnoxious employee's behavior, unless that behavior is targeted to individuals on the basis of their race") (citing *Vore*, 32 F.3d at 1164); *see, e.g.*, *Golla v. Office of the Chief Judge & Cook Cnty.*, No. 11 C 8149, 2015 WL 3814650, at *4 (N.D. Ill. June 18, 2015) (finding "nothing inherently discriminatory" or race-based about the comment: "All my life people have been standing in my way, and they all looked exactly like you.").

Further, these comments—made to custodians as a group—cannot create an inference of discrimination against Plaintiff in his *specific* hiring process. *See Perez v. Thorntons, Inc.*, 731 F.3d 699, 709 (7th Cir. 2013) (holding that stray remarks in

12

the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus); *Fuka v. Thomson Consumer Elec.*, 82 F.3d 1397, 1403 (7th Cir. 1996) (to serve as circumstantial evidence, remarks may only be taken as evidence of discrimination if the plaintiff can show that the remarks "were related to the employment decision in question"); *Outley v. City of Chicago*, 354 F. Supp. 3d 847, 866 (N.D. Ill. 2019) (Under Title VII, stray "remarks standing alone do not establish discriminatory motive unless they were by the decision maker and can be connected to the decision.") (internal quotations omitted).

As additional support, Plaintiff also claims that Williams referred to Mexican workers by "Mr." and "Mrs.," yet called African-American workers by their first names. [98] at 3. But, Plaintiff concedes that he never heard Williams make such statements; rather, he states that other employees told him about how Williams addressed various employees. [100] ¶ 4; [99-6] (Exhibit F) at 67−68. Such rumors, however, fail to support Plaintiff's claim. *Rand v. CF Inds., Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994) (inferences or opinions "must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors."); *see also Outley*, 354 F. Supp. 3d at 866 (holding that inferences and opinions to prove pretext in a Title VII case "must be grounded in observation or other first-hand personal experience.").[4] Absent any admissible evidence in the record (such as statements based upon personal

---

[4] Although not included in his response memorandum, Plaintiff's statement that unnamed coworkers, at an unspecified time, once told him they heard Williams say Mexican workers perform better than African-American workers, [100] ¶ 6, fails to raise any inference of race-based discrimination for this same reason.

13

observation or first-hand experience), Plaintiff cannot utilize second-hand accounts from other employees to defeat summary judgment.

In short, Plaintiff fails to provide sufficient evidence to demonstrate Williams' racial bias against him in either the internal or external hiring process. Based upon this record, Defendants must prevail as a matter of law on Plaintiff's claim that Williams failed to promote him because of his race. As such, this Court grants Defendants' motion for summary judgment as to Count I.

**B.    Plaintiff's IWA Claim**

Plaintiff claims the City violated Section 15(b) of the IWA when it refused to promote him after: (1) filing EEO charges; and (2) complaining to the OIG. [98] at 6.

As an initial matter, the parties spend considerable time disputing the complaints upon which Plaintiff bases his IWA claim. *See* [95] at 10–14; [98] at 6–8. Nonetheless, at the parties' motion hearing on April 2, 2019, Plaintiff confirmed that his IWA claim rests solely upon his March 2016 sexual harassment complaint. Defendants move for summary judgment on this claim, arguing *inter alia* that no causal connection exists between Plaintiff's complaint and the decision not to promote him. [95] at 9–14. This Court agrees and finds that Plaintiff fails to demonstrate a causal connection for purposes of his IWA claim.

Section 15 provides that:

An employer may not retaliate against an employee for disclosing information to government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation.

14

740 ILCS 174/15(b). To succeed on a 15(b) claim, a plaintiff must show: (1) an adverse employment action by his employer; (2) which was in retaliation; (3) for the employee's disclosure to a government or law enforcement agency; (4) of a suspected violation of an Illinois or federal law, rule, or regulation. *Elue v. City of Chicago*, No. 16 CV 9564, 2018 WL 4679572, at *8 (N.D. Ill. Sept. 28, 2018) (citing *Sweeney v. City of Decatur*, 79 N.E.3d 184, 188 (Ill. App. Ct. 2017)).

Here, Plaintiff's IWA claim fails because he offers no proof that the City refused to promote him because of his prior complaint. In fact, Plaintiff's response memorandum fails to address causation at all, thus waiving this argument entirely. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.") (internal citations omitted); *see also United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510–11 (7th Cir. 2010) ("summary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact, and it was not the district court's job to sift through the record and make [plaintiff's] case for him.").

And even if Plaintiff had addressed the issue of causation, the record before this Court fails to contain sufficient evidence to create a genuine dispute of fact. Viewing Plaintiff's statements of additional facts in the light most favorable to him shows only two potentially relevant pieces of evidence. First, at some point in 2016, Aaron Watts told Plaintiff "to stop filing IG complaints and stop filing grievances and then maybe [Williams] would give [him] the position." [100] ¶ 11; [99-6] (Exhibit F) at 161. Notably, however, the record does not specify what factual basis led to his

15

hypothetical opinion about what decisions William might make in the future about some unspecified position. *Id.*; [96-7] (Exhibit P); [106-1] (Exhibit A). Further, Watts' unrebutted testimony states that he exercised no authority in the 2016 foreman promotion process, and that his comments to Plaintiff constituted his own personal advice. [106-1] at 38.

Second, to support his claim, Plaintiff's statement of additional facts cites to Administrative Services Officer Priscilla Crowder's deposition testimony. [100] ¶ 20. When asked whether "Williams and other people in HR had already decided that they weren't going to hire" Plaintiff, Crowder responded:

> Yes, and that was not from this one. This is from everyone that he had, even the last one, the case when they didn't hire him. I think it was this one when Rob Diaz was up there talking about Argentene.
>
> They [were] joking when they did not send out letters; and when [Plaintiff] was coming up and asking about the questions, because I was there – Josephine and I [were] there when he was asking for his letter, did they make a decision, did they make a decision, and they kept saying no.
>
> I told Josephine "If they didn't make a decision why is it taking so long for them to get their letters?" She stated that they told her – Argentene and Robye then told her to hold off. Don't send out anything.

[100] ¶ 20; [96-3] (Exhibit E) at 46–47. But this excerpt, without more, leaves unclear what hiring decision, people, or general events Crowder refers to here. *See id.* Thus, this Court cannot find a genuine dispute exists based solely upon this isolated statement, particularly when Crowder, as an administrative services officer, did not play any role in evaluating the foreman candidates at issue in this case.

Without more information, this Court cannot find that Watts' advice, nor Crowder's vague statement, creates a genuine issue of material fact as to whether the Aviation Department retaliated against Plaintiff because of his sexual harassment complaint. Indeed, Plaintiff has provided no evidence—aside from Williams' mere knowledge of the complaint—to suggest that she or anyone from the City infused retaliatory animus into the consensus meeting and overall DHR decision-making process. *See Williams v. Office of the Chief Judge*, 839 F.3d 617, 627 (7th Cir. 2016) ("In order to show whistleblower retaliation, a plaintiff must provide some evidence that the employer had a retaliatory motive."); *c.f. Elue*, 2018 WL 4679572, at *8 (denying summary judgment on section 15(b) claim because employer threatened plaintiff directly after filing a report of an ethical violation, and thus "a juror could reasonably conclude that [employer's] decision five months later not to promote [plaintiff] was in retaliation for that report."). Instead, the record demonstrates that the panel, along with Easter, chose not to hire Plaintiff because he: (1) failed to provide actual details and examples of work experience in response to the interview questions; and (2) gave poor answers to leadership-related questions. [96] ¶ 32.

Accordingly, this Court grants Defendants' motion for summary judgment as to Count V.

## IV. Conclusion

This Court grants Defendant's motion for summary judgment [94]. The Clerk shall enter judgment for Defendant and against Plaintiff. All dates and deadlines, including the trial date, are stricken. Civil case terminated.

Dated: April 11, 2019

Entered:

John Robert Blakey
United States District Judge